AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Arizona

United States of America
v.

Alexis Saul Monter

*Defendant*

Case No. 26-3265MJ

(Filed Under Seal)

SEALED

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

**COUNT ONE**

On or about July 8, 2026, in Maricopa County, within the District of Arizona, the defendant, Alexis Monter and another individual, did knowingly and intentionally combine, conspire, confederate and agree together and with others known and unknown to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

**COUNT TWO**

On or about July 8, 2026, in Maricopa County, within the District of Arizona, the defendant, Alexis Monter did knowingly and intentionally distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1- ( 2-phenylethyl ) -4-piperidinyl] propanamide ("Fentanyl"), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

This criminal complaint is based on these facts:

See Attached Statement of Probable Cause, Incorporated by Reference Herein

☒ Continued on the attached sheet.

NICHOLAS K HENDERSON Digitally signed by NICHOLAS K HENDERSON Date: 2026.08.20 14:43:41 -07'00'

*Complainant's signature*

Digitally signed by DAVID CONTI Date: 2026.08.20 14:47:49 -07'00'

Reviewed by AUSA D. Matthew Conti

Special Agent Nicholas K. Henderson
Homeland Security Investigations

*Printed name and title*

Sworn telephonically and signed electronically.

M Morrissey

Date: 8/20/26

*Judge's signature*

City and state: Phoenix, Arizona

Honorable Michael T. Morrissey, U.S. Magistrate Judge

*Printed name and title*

## STATEMENT OF PROBABLE CAUSE

I, Nicholas Henderson, Special Agent of Homeland Security Investigations, being duly sworn, declare and state as follows:

## INTRODUCTION AND BACKGROUND OF AFFIANT

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Special Agent with Homeland Security Investigations (HSI) and have been since October 2023. I am currently assigned to the HSI Arizona Office of the Special Agent in Charge, Phoenix Homeland Security Task Force (HSTF). I was previously employed as a State Trooper for the Arizona Department of Public Safety from June 2022 to October 2023. Prior to working as a State Trooper, I worked as a Patrol Deputy and K-9 Handler for Jackson County Sheriff's Office, Illinois, from August 2016 to June 2022. Previously, I worked as a Corrections Officer for Jackson County Sheriff's Office from May 2015 to August 2016.

3. I am a graduate of the Criminal Investigator Training Program and Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. Additionally, I am a graduate of the Arizona Advanced State Trooper's Academy, Illinois Police Training Institute, and the St. Clair County, Illinois, Corrections Officer Academy. In addition to the above, I have also received the following relevant training; Topp's K-9 Handler Training Academy in Grayslake, Illinois, Arizona State Trooper's Advanced Criminal Interdiction Training, Advanced Criminal Interview and Interrogation, Arizona Gang Identification and Enforcement, Basic Threat Liaison Officer, and Face Reviewer and Facial Recognition training.

4. As a State Trooper in the State of Arizona, I conducted various felony and misdemeanor investigations. During this tenure, I investigated a handful of street-level narcotics crimes, which included conducting searches of people, vehicles, and cellphones. I conducted in-depth interviews, analyzed intelligence, and sought and obtained search warrants. I assisted the Arizona DPS Gang & Immigration Intelligence Team Enforcement Mission (GITEM) in multiple operations involving known gang members.

5. During my time as a Patrol Deputy and narcotics detection K-9 Handler, I was involved in numerous contraband interdiction operations. These operations often involved conducting street-level and mid-level narcotics investigations with the assistance of narcotics detectives from state, local, and federal partners. While working in this position, I gained valuable training and experience with narcotics, weapons, gangs, and financial investigations. This experience provided valuable insight as to how criminal organizations commonly distribute contraband and collect proceeds.

6. Since becoming an HSI Special Agent, I have gained additional knowledge, training, and experience pertaining to narcotics trafficking, bulk cash smuggling, money laundering, and weapons trafficking investigations. Specifically, I have experience investigating criminal organizations involving the importation and distribution of larger quantities of controlled substances. Additionally, I have obtained extensive training and experience regarding crimes pertaining to immigration and United States border violations. I have also worked and conferred with other agents who have extensive experience involving narcotics trafficking investigations. I have extensive training and relative experience conducting surveillance operations, which involves tracking and documenting the movements of individuals trafficking drugs and those suspected of trafficking drugs.

7. Based on my experience, I am familiar with methods regularly utilized by drug trafficking organizations (DTO) in narcotics trafficking operations. I frequently speak with agents and other law enforcement officers to gain additional information concerning the value of narcotics, narcotics trafficking activities, and trends. I regularly talk with

agents and other law enforcement officers about their experiences and the results of their investigations. I am familiar with the methods and modes of narcotics operations, and the language and patterns of narcotics abuse and trafficking.

8. In preparing this complaint, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein. I have personal knowledge of the following facts or have learned them from other law enforcement officers. I have also relied on my training, experience, and background in law enforcement to evaluate this information.

## PROBABLE CAUSE

9. In June 2026, Homeland Security Investigations (HSI) Special Agents, assigned to the Phoenix Homeland Security Task Force (HSTF), received information regarding a transnational drug trafficking organization (DTO) operating between Mexico and numerous states in the United States, including Arizona. Information received further indicates that an individual, ("the Drug Source"), is responsible for coordinating and supplying controlled substances within the United States.

10. In the days leading up to July 8, 2026, an HSI undercover agent ("UC Agent") communicated with the Drug Source. During these communications, the Drug Source agreed to sell the UC Agent approximately one kilogram of fentanyl pills (approximately 10,000 pills) for $4,000.00 in Phoenix, Arizona.

11. On July 8, 2026, the UC Agent confirmed the deal with the Drug Source. At approximately 1846 hours, the Drug Source contacted the UC Agent telling them the courier would be contacting them directly to arrange the delivery. The Drug Source instructed the UC Agent to provide the courier with $2,000.00 and then to wire him the remaining $2,000.00

12. At approximately 1848 hours, the UC Agent received a text message from the local distributor via WhatsApp from telephone number (480) 989-1866 ("x1866"). The

courier asked the UC Agent to go to 91st Avenue and Camelback Road, but the UC Agent requested to meet closer to 75th Avenue and Indian School. The courier agreed.

13. At approximately 1920 hours, the UC Agent called the courier using x1866 and they agreed to meet at the Ojos Locos Sports Cantina located at 7609 W. Thomas Rd., Phoenix, AZ.

14. At approximately 1927 hours, the UC Agent called the courier using x1866 again to exchange vehicle information. The courier stated he would be arriving in a white sports utility vehicle.

15. At approximately 1930 hours, a white Mazda CX-5 ("Mazda") bearing Arizona registration number HDA6G6 arrived at the meeting location and parked next to the undercover vehicle ("UC Vehicle"). The UC Agent met with the occupants of Mazda. The driver appeared to be a younger Hispanic male with a brown shirt, and the front passenger was also a Hispanic male with a black beard, sleeve tattoo on his right arm, wearing black glasses, black hat, and black shirt. The front seat passenger was later identified as Alexis Aaul Monter ("Monter") as described in more detail below. According to the UC Agent, the front seat passenger with the black beard (Monter) was doing all of the talking related to the drug deal. During the meeting, Monter argued the terms of the deal, and he ultimately called someone else to confirm the details of the deal. Afterwards, the UC Agent gave the money to Monter who provided a grocery sack containing blue pills.

16. After completion of the transaction, Surveillance units attempted to follow the Mazda, but lost the vehicle in a residential area near 91st Ave. and Campbell Rd. in Phoenix, AZ.

17. Following the purchase, investigators met with the UC Agent to recover the drugs. I examined the evidence and observed a white grocery bag containing blue pills that were stamped with, "M" on one side and, "30" on the other. I have learned through my law enforcement training and experience that the pills appeared to be fentanyl laced pills.

Investigators turned over the evidence to the DEA for storage, processing, and laboratory analysis.

18. During evidence processing, the aggregate weight for the blue pills was determined to be 730 grams. The grocery bag with the blue pills was weighed inside a cellophane DEA evidence bag. The DEA laboratory later concluded that the pills contained N-Phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl) with a net weight of 662.10 grams.

19. I later conducted law enforcement record checks regarding the occupants of the Mazda. Open-source Cash App user data indicates that x1866 is associated with "Alexis Monter" with the handle, "$AlexisMonter7." I conducted law enforcement record checks of Alexis Monter and located a border crossing record for Monter. The record indicated that Monter crossed from Mexico into the United States through the Douglas, AZ point of entry (POE) on July 7, 2026, in a gray Acura MDX SUV ("Acura") bearing Arizona temporary registration L219912. Photographs of the individual depict a Hispanic male wearing a black shirt, black hat, glasses, with a large black beard, and a sleeve style tattoo on his right forearm. Arizona Motor and Vehicle Department records indicate that Monter has an Arizona Driver's License listing him as approximately 6'03" tall and 210 pounds at the time of issuance on June 11, 2026. The records indicate he resides at a residence on 11th St. in Douglas, AZ. I compared the driver's license photograph to the border crossing photograph, and they appear to me to be photographs of the same person.

20. I showed the UC Agent the photograph of Monter from the border crossing photograph and the driver's license photograph. The UC Agent identified the front passenger of the Mazda as Monter. I also reviewed video footage of the controlled drug purchase taken from recording devices utilized by the UC Agent. After reviewing the video, I believe that Monter was the front passenger of the Mazda.

21. A criminal history check of Monter indicates he has prior convictions for Alien Smuggling and Transporting Illegal Aliens, Assault-Intent/Reckless/Injure, Failure

to Appear in the 2nd Degree, Disorderly Conduct –Fighting, Aggravated Assault Domestic Violence - Impede Breathing, Narcotic Drug Possession for Sale, and Sell/Trans or Attempt Schedule 1 or II Controlled Substance. While Monter was serving a prison sentence in the Arizona State Department of Corrections, he received a Major Disciplinary Infraction for Fighting.

22. On August 19, 2026, Pima County Arizona Sheriff's Office broadcasted a Beyond the Lookout Of ("BOLO") of a 2007-2013 gray Acura MDX SUV and two male subjects that were involved in a shooting that occurred in the West Valencia/Star Valley Arizona in the early morning hours resulting in the death of one person and severe injury to another. The BOLO further described the suspect vehicle missing a gas cap cover and having a rear driver's side wheel that is different from the other three wheels on the vehicle. I reviewed photographs of the suspect vehicle on the BOLO and noticed that the vehicle has a moonroof, receiver hitch assembly, chrome door handle accents, and a brow style front windshield tint strip. After reviewing the photographs in the BOLO, I realized the vehicle is similar to the vehicle Monter crossed into the United States in on July 7, 2026.

23. I conducted additional queries of law enforcement databases and learned that the Acura is associated with Monter. I noticed through border crossing data and photographs that the Acura associated with Monter is missing a proper gas cap cover and the other features matched, except that the driver's side rear wheel was not different.

24. Then I reviewed border crossing and license plate reader ("LPR") photographs and data of the Acura that occurred after July 7, 2026. I noticed that in the more recent photographs the Acura associated with Monter had a rear driver's side wheel matching the one in the photographs of the BOLO. This information leads me to believe that sometime after July 7, 2026, someone replaced the rear driver's side wheel on the Acura associated with Monter.

25. The Acura associated with Monter has had two different Arizona temporary registration plates on the vehicle since June 15, 2026, to present. The first temporary

registration number issued to Monter is L219912, valid from June 15, 2026, to July 30, 2026. The second temporary registration number issued to Monter is L235281, valid from August 4, 2026, to September 18, 2026. LPR data shows regular camera readings in the Phoenix metro area for both plate numbers between July 2026 to present with at least one reading near Casa Grande.

26. Based on the facts and circumstances stated in this Affidavit, I submit that there is probable cause to believe that the defendant, Alexis Saul Monter, committed the offenses as alleged in the Complaint.

NICHOLAS K HENDERSON
Digitally signed by NICHOLAS K HENDERSON
Date: 2026.08.20 14:45:10 -07'00'

Nicholas K. Henderson
Special Agent
Homeland Security Investigations

Electronically signed and telephonically sworn this 20 day of August 2026.

M Morrissey

HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge